# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 50422 | **DATE** | 9/20/2001 |
| **CASE TITLE** | Royal Maccabees vs. Parker | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

> Royal Maccabees' Motion for Summary Judgment; Parker's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached Memorandum Opinion and Order, the parties' respective Motions for Summary Judgment are granted in part and denied in part. Parker's request for oral argument is denied. Judgment is entered in Royal Maccabees' favor with respect to Parker's counterclaims (both Counts I and II). The parties are ordered to schedule a settlement conference with the Magistrate Judge within 30 days after receipt of this Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 20 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| X | Copy to judge/magistrate judge. | | SEP 20 2001 | |
| b/LCac | courtroom deputy's initials | | date mailed notice | |

CLERK, U.S. DISTRICT COURT

01 SEP 20 PM 1: 33

FILED-WD

Date/time received in central Clerk's Office

mailing deputy initials

**DOCKETED**

**SEP 2 0 2001**

| | |
|---|---|
| ROYAL MACCABEES LIFE INSURANCE COMPANY, | ) ) |
| Plaintiff, | ) ) No. 98 C 50422 ) |
| v. | ) ) |
| MICHAEL J. PARKER, M.D., | ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

**I.   Introduction**

On December 22, 1998, plaintiff Royal Maccabees Life
Insurance Company ("Royal Maccabees")[1] filed a one-count
declaratory judgment action against defendant Michael J. Parker,
and Parker filed a two-count counterclaim.  In its complaint,
Royal Maccabees seeks a declaration that it does not owe
disability insurance benefits under three policies to Parker.   In
Count I of his counterclaim, Parker alleges Royal Maccabees'
refusal to pay benefits is vexatious and unreasonable under
Illinois law.[2]  Both parties have filed cross-motions for summary
judgment pursuant to Fed.R.Civ.P. 56.  The court has diversity

---

[1]  After this lawsuit was filed Royal Maccabees changed its
name to Reassure America Life Insurance Company.  For
consistency, the court will continue to call it "Royal
Maccabees."

[2]  Parker also brought a claim for intentional interference
with contract, but has abandoned this claim.  (Pl. Summ. J. Mot.,
¶ 4)

and federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332. Venue is proper in this district and division. Compl. ¶ 9; 28 U.S.C. § 1391.

## II. **Preliminary Matters**

Parker's LR 56.1(b)(3) response to Royal Maccabees' LR 56.1(a) statement of facts is not in conformity with LR 56.1(b) in that his denials are not supported by specific references to affidavits, parts of the record or other supporting materials. Typically, an answer in a LR 56.1(b) response that does not deny the factual assertions in the numbered paragraph of a LR 56.1(a) statement with citations to supporting evidence in the record is deemed an admission. Jupiter Aluminum Corp. v. Home Ins. Co., 225 F.3d 868, 871 (7th Cir. 2000). However, Parker has filed his own LR 56.1(a) statement of facts. Although the court has no obligation to do so, it will consider Parker's LR 56.1(a) statement in conjunction with Royal Maccabees' LR 56.1(a) statement, in determining whether issues of fact exist.

In his LR 56.1(a) statement of facts, Parker at times cites generally to an exhibit without providing a specific page number, which is improper. In addition, some of the citations do not support the facts contained therein, although Royal Maccabees nevertheless admits to certain paragraphs. Thus, the court will not consider paragraphs 5, 6, 10, 11, 13, 14, 27, and 29 of Parker's LR 56.1(a) statement.

### III. **Facts**

Parker is insured for disability benefits under three insurance policies issued by Royal Maccabees (Nos. 8102949, 8095910, and 8095862) ("the policies"). (Pl. LR 56.1(a) ¶ 5) The policies state in relevant part:

> Total Disability means that, due to Accident or Sickness, you cannot perform the substantial and material duties of your regular occupation. Regular Occupation means your regular occupation at the time Disability began. The definition of Total Disability will apply for the period of time shown on the Schedule Page as Regular Occupation Period . . . (The Regular Occupation Period shown on the Schedule Page of the Policies is lifetime.)

(Id. ¶ 7) The policies also state that Parker is to give Royal Maccabees written notice of a claim for disability benefits "within thirty days after the beginning of any loss covered by [the policies], or as soon as it is reasonably possible." (Id. ¶ 8) The Proofs of Loss provision states:

> PROOFS OF LOSS–Our Home Office must receive written proof of loss for periodic benefits within 90 days after the date of loss or the end of the period for which benefits are due. Failure to furnish proof within the time required will not invalidate or reduce any claim if it was not reasonably possible to give proof within this time. Proof must be furnished as soon as reasonably possible. It must be no later than one year from the time proof is otherwise required, unless you are legally incompetent.

(Id. ¶ 9)

Parker worked as an emergency room physician with OSF St. Anthony's ("St. Anthony's") in Rockford, Illinois, beginning in April 1986. (Def. LR 56.1(a) ¶ 1) He originally worked at St. Anthony's as an independent contractor for a company called Mesa,

3

S.C. ("Mesa"). (Compl. ¶ 4; Def. LR 56.1(a) ¶ 2) In June 1990, Mesa lost its contract with St. Anthony's but Parker continued working at St. Anthony's. (Def. LR 56.1(a) ¶ 2) The record is unclear as to whether Parker was an employee or independent contractor of St. Anthony's thereafter, or both. (Compare Pl. LR 56.1(a) ¶¶ 18-19 with Def. LR 56.1(a) ¶ 2) In any event, Parker purchased occupational disability insurance from Royal Maccabees with an effective date of September 1, 1986. (Def. LR 56.1(a) ¶ 3)

In 1994, he was diagnosed with clinical depression, a problem he apparently has had since adolescence. (Pl. LR 56.1(a) ¶ 108) In the mid- to late 1990s, Parker began self-prescribing medications, including Vicodin, and became addicted. (Def. LR 56.1(a) ¶¶ 8, 12) He subsequently underwent an in-patient addiction treatment program at Rush Presbyterian St. Lukes ("Rush") in Chicago, from July 11, 1996 through September 3, 1996. (Id. ¶¶ 16-17, 20; Pl. LR 56.1(a) ¶ 25) Thereafter, he attended outpatient treatment programs. (Def. LR 56.1(a) ¶¶ 21-22) At Rush, Parker was under the care of Dr. Feldman, who diagnosed Parker with chemical dependency and depression. (Id. ¶¶ 17-18) Feldman is the Medical Director of Rush Behavioral Health in DuPage County, is board certified in family practice and addiction medicine, and has been practicing in that area of specialty since 1990. (Pl. LR 56.1(a) ¶ 89) At the conclusion

4

of Parker's treatment at Rush, Feldman released him to return to work without restrictions. (Id. ¶¶ 27-28)

However, Feldman recommended that Parker not return to the practice of emergency medicine based on his medical illness and Feldman's experience in working with chemically-dependent physicians. (Def. LR 56.1(a) ¶ 19; Pl. LR 56.1(a) ¶ 111) Parker's treating psychiatrist, Dr. Carol DuBois, has diagnosed Parker with severe depression complicated by chemical dependency. (Def. LR 56.1(a) ¶¶ 9, 30) She also believes he should not return to ER medicine. (Id. ¶ 31) Another physician also believes Parker's disability of substance dependency disorder makes Parker unable to work as an ER physician. (Id. ¶ 37)

Nevertheless, when he was released from Rush, Parker attempted to return to work at St. Anthony's as the Medical Director of its Emergency Room (the position he held at the time he left to undergo treatment at Rush; the record is unclear as to when he initially held this position). (Pl. LR 56.1(a) ¶ 35) The hospital, however, refused to allow him to return as the Medical Director, but offered him a position as an ER clinical physician. (Id. ¶ 36) Parker turned this position down, and never returned to St. Anthony's. From November or December 1996 through March or April 1997, Parker tried to get a job at several hospitals as an ER physician (id. ¶ 43), but was unsuccessful. Since then he has worked at the student health service center at

Northern Illinois University as a staff physician on a part-time basis. (Id. ¶¶ 63-66) He also worked at the Munson Medical Center Urgent Care Center in Michigan. (Id. ¶ 67) His work includes evaluating patients, taking histories, performing physical examinations, ordering tests, and making determinations about diagnosis and treatment. (Id. ¶ 68)

Parker reported his chemical dependency to the Illinois State Medical Society, and became a member of the Illinois State Medical Society Physician Assistance Program on June 16, 1997. (Def. LR 56.1(a) ¶¶ 32, 34) As part of his treatment, in August 1997, Parker agreed with the licensing board and the State of Illinois not to perform ER medicine until August 2001. (Pl. LR 56.1(a) ¶ 50; Def. LR 56.1(a) ¶ 35)

Since July 6, 1996, Parker has not used narcotics, has not relapsed on Vicodin, has fully complied with his after-care program, and as of July 1999 was stable in recovery. (Pl. LR 56.1(a) ¶ 46) Parker submitted a written disability claim to Maccabees on September 15, 1997, fourteen months after he was initially treated at Rush. (Id. ¶ 12) Proof of loss was submitted on or about October 1, 1997. (Compl. ¶ 19) Royal Maccabees denied the claim on January 7, 1998. (Pl. LR 56.1(a) ¶ 113)

## IV. **Analysis**

In addressing summary judgment, all facts are taken in the

6

light most favorable to the nonmoving party and all inferences are drawn in that party's favor. Winter v. Minnesota Mut. Life Ins. Co., 199 F.3d 399, 408 (7th Cir. 1999). The purpose of summary judgment is to determine whether, based on the record, any material dispute of fact exists that requires a trial. Id. The nonmoving party cannot rest on the pleadings and must come forward with sufficient evidence of a genuine issue of material fact. Id. A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in the nonmoving party's favor. Id. When the parties file cross-motions for summary judgment, the court construes all inferences in favor of the party against whom the motion under consideration is made. Wilson v. Chrysler Corp., 172 F.3d 500, 511 (7th Cir. 1999). Cases involving the interpretation of contractual documents such as insurance contracts are particularly well-suited to disposition on summary judgment. Neuma, Inc. v. AMP, Inc., 259 F.3d 864, 871 (7th Cir. 2001).

**A.    ERISA**

At the outset, the court notes the parties' briefs are silent regarding the issues in the context of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., even though Royal Maccabees invoked ERISA in its complaint. (Compl. ¶¶ 3, 6) Typically, one of the initial steps of an ERISA claim is showing the insurance policy at issue is an

ERISA plan.  See, e.g., Postma v. Paul Revere Life Ins. Co., 223

F.3d 533, 537 (7th Cir. 2000) (analyzing whether long-term

disability plan was an ERISA plan).  The parties confusingly

refer to Parker as both an independent contractor and an employee

of St. Anthony's, and it is difficult to determine whether the

policies were part of a plan established or maintained by an

employer.  According to the allegations in the complaint, the

insurance policies were initially group policies of insurance

issued to Parker's employers (Mesa and, later, Emergency and

Trauma Consultants) and subsequently converted to individual

disability insurance policies.[3]  (Compl. ¶¶ 4-6)  Regardless, the

court need not reach the issue for several reasons.

     First, the court has diversity jurisdiction over the

dispute.  Second, even assuming the insurance policies at issue

are ERISA plans, the parties have not addressed the standard of

review the court should use in reviewing Royal Maccabees'

interpretations of the insurance policies, which causes the court

to assume the standard of review is de novo.  See Firestone Tire

& Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Herzberger v.

Standard Ins. Co., 205 F.3d 327, 331 (7th Cir. 2000).  Federal

common law guides interpretations of ERISA plans, but state

common law may be used as a basis in construing the federal

_____

     [3]  It is not clear whether Parker was the sole shareholder,
owner and employee of at least one of the companies, Emergency
and Trauma Consultants.

common law.  <u>Trustmark Life Ins. Co. v. University of Chicago</u>
<u>Hosp.</u>, 207 F.3d 876, 881 (7th Cir. 2000).  Nothing in the court's
research has indicated that federal common law interpreting ERISA
would diverge from Illinois state law in this case.  The parties
agree that Illinois law applies here.  <u>See</u> <u>Checkers Eight Ltd.</u>
<u>P'ship v. Hawkins</u>, 241 F.3d 558 (7th Cir. 2001).  Thus, the
court's subsequent analysis applies with equal force to Royal
Maccabees' state law and federal claims.

**B.    <u>Whether Parker Is Totally Disabled</u>**

At the outset, the court addresses Parker's argument that
Royal Maccabees is collaterally estopped from litigating whether
he is totally disabled because of a state court case, <u>Emergency</u>
<u>and Trauma Consultants, Ltd. v. OSF Healthcare Sys.</u>, No. 96 L
374.  Therein, Parker sued St. Anthony's for breach of contract,
and the state court ruled Parker was disabled and unable to
fulfill his contractual obligations.  (Def. Summ. J. Mot., p. 10)
Collateral estoppel (also called issue preclusion) applies when:
(1) the issues decided in the prior adjudication are identical to
issues presented for adjudication in the current proceeding; (2)
there was a final judgment on the merits; and, (3) the party
against whom estoppel is asserted was a party or in privity with
a party in the prior action.  <u>Kalush v. Deluxe Corp.</u>, 171 F.3d
489, 493 (7th Cir. 1999) (applying Illinois law).  The court
finds issue preclusion is inapplicable here.  The state court

case involved a breach of contract claim. The state court was
not addressing whether Parker was disabled within the meaning of
the insurance policies at issue here, and the policies'
definitions are key in this case. Royal Maccabees never had an
opportunity to litigate the policy coverage issue. Therefore,
the state court's holding has no relevance here. To the extent
Parker argues the preclusive effect of res judicata (also called
claim preclusion) applies, this argument is rejected for the same
reason. See We Care Hair Dev., Inc. v. Engen, 180 F.3d 838, 842
(7th Cir. 1999) (listing elements needed for res judicata to
apply under Illinois law).

The construction of an insurance policy is a question of
law. Employers Ins. of Wausau v. James McHugh Constr. Co., 144
F.3d 1097, 1104 (7th Cir. 1998). In construing an insurance
policy, the court must ascertain the parties' intent by
construing the policy as a whole, while considering the risk
undertaken, the subject matter that is insured, and the purposes
of the entire contract. Id. When the words of the policy are
unambiguous, they are afforded their plain, ordinary and popular
meaning. Id. If the words are susceptible to more than one
interpretation, they are ambiguous and are to be construed in
favor of the insured and against the insurer. Id.

Here, the pertinent policy language is:

Total Disability means that, due to Accident or Sickness,
you cannot perform the substantial and material duties of

10

your regular occupation.  Regular Occupation means your
regular occupation at the time Disability began.

(Pl. LR 56.1(a) ¶ 7)  The parties agree the insurance policies at

issue are of the type generally referred to as occupational

insurance (Pl. Summ. J. Resp., p. 1), which covers an insured

when he is unable to pursue the particular occupation in which he

was previously engaged.  See McFarland v. General Am. Life Ins.

Co., 149 F.3d 583, 584 n.1 (7th Cir. 1998).  The parties also

agree that Parker's "regular occupation" is "emergency room

physician" (Pl. Resp. to Def. Summ. J. Mot., p. 3), and this

interpretation is consistent with case law.  See Rahman v. Paul

Revere Life Ins. Co., 684 F. Supp. 192, 194-95 (N.D. Ill. 1988)

(cited favorably in Winter, 199 F.3d at 409); see also Oglesby v.

Penn Mut. Life Ins. Co., 877 F. Supp. 872, 881-82 (D. Del. 1994);

Stender v. Provident Life and Accident Ins. Co., No. 98 C 1056,

2000 U.S. Dist. Lexis 11478, at *21-24 (N.D. Ill. June 28, 2000).

In determining whether Parker is totally disabled, the

initial focus of the court's analysis centers on whether Parker

suffers from a "sickness."[4]  Royal Maccabees purports to agree

that Parker suffers from a "sickness," but defines this to be

"addiction in remission." (Pl. Summ. J. Resp., p. 1)  Royal

Maccabees then argues Parker is physically and mentally able to

return to his duties as an ER physician.  On the other hand,

--------------------

[4]  The parties agree Parker has not suffered an "accident"
within the meaning of the policies.

11

Parker claims his "sickness" is opiate dependency in full

sustained remission and major chronic depression in partial

remission.

> The policies define "sickness" to mean:
>
> a sickness, disease or pregnancy that a) first manifests
> itself while this Policy is in force; or b) which began
> prior to the Date of Issue of this Policy if it was
> disclosed on the application. The word manifests means
> becomes known to you by the presence of symptoms that would
> cause an ordinarily prudent person to seek medical
> attention.

(Compl. Exhs. A, B, C)

The time for determining Parker's "sickness" is at the time

he sought treatment for his chemical dependency, or shortly

thereafter. <u>Cf</u>. <u>Winter</u>, 199 F.3d at 409-10 (appropriate focus is

on occupation insured was engaged in at the time of his

sickness). The policies' definition of "sickness" is not

particularly helpful because the definition uses the word

"sickness." Nevertheless, the court finds the word "sickness" to

be unambiguous. <u>Cf</u>. <u>Knapp v. Eagle Prop. Mgmt. Corp.</u>, 54 F.3d

1272, 1284 (7th Cir. 1995) ("bodily injury, sickness, or disease"

not ambiguous). The dictionary, <u>see</u> <u>I/N Kote v. Hartford Steam</u>

<u>Boiler Inspection and Ins. Co.</u>, 115 F.3d 1312, 1317-18 (7th Cir.)

(using dictionary to interpret plain meaning of insurance policy

is acceptable), <u>cert. denied</u>, 522 U.S. 983 (1997), defines

"sickness" as "illness; disease. An ailment of such a character

as to affect the general soundness and health; not a mere

temporary indisposition, which does not tend to undermine and weaken the constitution." BLACK'S LAW DICTIONARY 1380 (6[th] ed. 1990). Under this definition, Parker's former addiction qualifies as a "sickness" because it is not a temporary indisposition. On the contrary, addiction is a chronic illness, see J. Reggers & M. Annsseau, *Guidelines for the Treatment of Opiate Addiction,* 55 (5) REV. MED. LIEGE 409-16 (May 2000) (*abstract available at* Lexis, Medline database), and an addict requires long-term follow-up care, given that the risk of relapse is always present, see Sanz Yaguez & Lopez Corbalan, *Abuse of psychoactive drugs among health professionals*, 46 (8) Rev. Esp. Anestesiol Reanim 354-58 (Oct. 1999) (*abstract available at* Lexis, Medline database).

In addition, it is undisputed Parker suffers from chronic depression. Royal Maccabees argues Parker's depression cannot be considered because he has suffered from this illness since adolescence, was always able to perform his duties as ER physician, and admits his failure to resume his care in emergency medicine is not the result of depression. (Pl. LR 56.1(a) ¶¶ 55, 85, 108) Nevertheless, to ignore the depression altogether is an incorrect reading of the record. It is clear Parker's chronic depression played a role in his doctors' recommendations that he not return to an ER physician position. Thus, the court may properly consider this illness as part of the addiction in

determining whether Parker suffers from a "sickness" within the policies' language.

Having determined that Parker suffers from a "sickness," the court must next consider whether, due to the sickness, Parker could not perform the substantial and material duties of his occupation as ER physician. Both parties rely in part on McFarland v. General Am. Life Ins. Co., 149 F.3d 583 (7th Cir. 1998) in arguing whether Parker can perform the substantial and material duties of his regular occupation. In McFarland, 149 F.3d at 585, the Court of Appeals for the Seventh Circuit confronted the issue of whether an owner and operator of a heating and air conditioning business, who had suffered several physical injuries, was "totally disabled" within the meaning of an occupational disability insurance policy at issue. Determining whether the insured was "totally disabled," according to the Seventh Circuit, involves determining whether he was able to perform the "material and substantial duties" of his job. Id.

The McFarland Court found the policy language to be unambiguous because the policy clearly covered an insured with a disability that prevented him from continuing in his regular occupation. Id. at 587. Thus, according to the Seventh Circuit, an insured is totally disabled if the number of "substantial and material" duties that cannot be performed precludes continuation of employment in the occupation held prior to the disability.

14

Id. at 587-88. The court held this language could be reasonably interpreted to cover both qualitative and quantitative reductions in one's performance as a result of an injury or sickness. Id. at 588. A qualitative reduction is an injury or sickness that prevents an insured from performing a core and essential aspect of his job. Id. A quantitative performance reduction is one in which the injury or sickness does not physically prevent an employee from performing a given task but instead renders the person unable to perform enough of the tasks or to perform for a long enough period to continue working at his regular occupation. Id.

In this case, Parker is arguing he is precluded from performing 100% of the essential duties of his occupation, whereas Royal Maccabees is arguing he is precluded from performing 0% of his job duties. Royal Maccabees argues Parker is physically and mentally capable of returning to his job as an ER physician. It is only the future risk of relapse, according to Royal Maccabees, which prevents him from returning to ER medicine, and the future risk does not translate into being incapable of performing the substantial and material duties of ER physician at the present time.

Other federal district courts confronted with similar insurance language and a physician with a drug addiction in remission have rendered inconsistent decisions. Compare Brosnan

15

v. Provident Life and Accident Ins. Co., 31 F. Supp. 2d 460, 464
(E.D. Pa. 1998) (question of fact as to whether future fear of
relapse rendered anesthesiologist unable to perform substantial
and material duties of his occupation); Holzer v. MBL Life
Assurance Corp., No. 97 Civ. 5834(TPG), 1999 WL 649004, at *4-6
(S.D.N.Y. 1999) (question of fact as to whether anesthesiologist
with addiction problem was able to perform his duties), with
Allen v. Minnesota Life Ins. Co., No. 1:99-CV-1610-JOF (N.D. Ga.
Feb. 28, 2001) (unpublished) (future risk of drug addiction did
not render anesthesiologist disabled under insurance policy);
Levitt v. UNUM Life Ins. Co., No. L93-2434 (D. Md. July 15, 1994)
(unpublished) (anesthesiologist in remission for drug addiction
not disabled under insurance policy).

This court finds Royal Maccabees' interpretation gives too
narrow a reading to the meaning of the phrase, "cannot perform
the substantial and material duties" of ER physician.  Five
medical professionals have recommended that Parker not return to
the practice of emergency medicine because of his chemical
dependency coupled with his chronic depression.  (Def. LR 56.1(a)
¶¶ 19, 23, 26, 31, 37)  A determination that Parker is capable of
performing the substantial and material duties of an ER physician
would require him to go against the recommendations of these five
physicians.  While Parker may be willing to do this, he should
not be required to do this.  Imposing such a requirement is not a

reasonable reading of the phrase, "cannot perform the substantial and material duties" of an ER physician.

Royal Maccabees also states Parker has not returned to ER medicine because of the limitation placed on his medical license. (Pl. LR 56.1(a) ¶¶ 47-50)  Royal Maccabees argues this is a legal disability which does not trigger policy coverage.  As a general rule, disability insurance policies provide coverage for factual disabilities (i.e., disabilities due to an injury or sickness) but not for legal disabilities.  See, e.g., Provident Life and Accident Ins. Co. v. Fleischer, 26 F. Supp. 2d 1220, 1223 (C.D. Cal. 1998), aff'd, – F.3d –, 2001 WL 1002843 (9th Cir. Aug. 30, 2001).  The question of whether a loss of earned income is caused by a disability is often one for the jury.  Massachusetts Mut. Life Ins. Co. v. Millstein, 129 F.3d 688, 691 (2d Cir. 1997). Nevertheless, in this case the court finds as a matter of law that Parker's inability to perform his occupational duties was caused by his chemical dependency, not the restriction on his medical license.

In all of the cases where the courts held the insured's loss of income was caused by a legal disability rather than a factual disability, the courts emphasized the insured was able to practice in his occupation for years with his physical disability and did not seek disability benefits until the legal disability occurred.  See, e.g., Millstein, 129 F.3d at 691 (lawyer

17

practiced law for years while abusing drugs and did not stop practicing until his law license was revoked); <u>Goomar v. Centennial Life Ins. Co.</u>, 76 F.3d 1059, 1062-63 (9th Cir. 1996) (physician's psychosis did not prevent him from performing substantial and material duties of his occupation; he practiced medicine for years with the psychosis and did not stop until his license was revoked); <u>Massachusetts Mut. Life Ins. Co. v. Ouellette</u>, 617 A.2d 132 (Vt. 1992) (optometrist practiced for years with mental disorder and did not seek disability benefits until imprisoned); <u>Solomon v. Royal Maccabees Life Ins. Co.</u>, 622 N.W.2d 101, 104-06 (Mich. Ct. App. 2000) (physician with bipolar disorder practiced in his field for years with disorder and did not seek benefits until he voluntarily surrendered his license).

Contrary to such cases, Parker never returned to the position of ER physician after he was hospitalized for detoxification. Parker states two reasons prevent him from returning to ER medicine: the limitation on his medical license, and his doctors' recommendations that he not return. (Pl. LR 56.1(a) ¶ 42) Regardless, even if the medical license restriction were lifted (which apparently has or will occur shortly), this does not erase the recommendations of five physicians that he not return to ER medicine.[5] There is no

---

[5] There is no evidence the five physicians' recommendations against Parker returning to ER medicine were based on the restriction on Parker's medical license.

evidence from which a reasonable factfinder could believe that but for his legal disability, Parker would be able to perform the duties of his occupation.

## C.   **Whether Parker Gave Proper Notice**

Royal Maccabees argues that even if Parker is considered disabled within the meaning of the policies at issue, he is barred from pursuing any claim because he filed his claim too late. According to the policies, Parker was supposed to file his claim within thirty days after the beginning of any covered loss "or as soon as it is reasonably possible," and proof of loss within ninety days. Parker submitted a written disability claim to Maccabees on September 15, 1997, fourteen months after he was initially treated at Rush. (Pl. LR56.1(a) ¶ 12)

Notice of claim provisions in insurance policies are valid prerequisites to coverage and are not technical requirements. River v. Commercial Life Ins. Co., 160 F.3d 1164, 1169 (7th Cir. 1998). Late notice to an insurer is a basis for denying coverage. Id. A delay of even a few months in giving notice breaches the policy as a matter of law, defeats coverage, and results in summary judgment for the insurance company. Id. at 1170. However, if the insured has a justifiable and reasonable excuse for the delay in providing notice, even a lengthy period of time is not an absolute bar to coverage. Id. Illinois courts routinely consider four factors in assessing the reasonableness

of an insured's delay: (1) the language of the policy's notice
requirement; (2) the extent of the insured's sophistication in
the world of commerce and insurance; (3) awareness on the part of
the insured that an "occurrence" has taken place; and (4) once
aware of an occurrence, the diligence with which the insured
ascertains whether coverage is available. Id. Courts have also
considered whether prejudice to the insurer has resulted from the
delay. Ankus v. Government Employees Ins. Co., 674 N.E.2d 865,
870 (Ill. App. Ct. 1996). Whether notice was given within a
reasonable time is usually a question of fact and depends upon
the facts and circumstances of each individual case. Millers
Mut. Ins. Ass'n v. Graham Oil Co., 668 N.E.2d 223, 232 (Ill. App.
Ct. 1996).

   The court finds questions of fact exist as to whether Parker
reasonably gave notice of his claim. The policy language allows
for notice to be given "as soon as it is reasonably possible."
Courts interpret this phrase to mean the insured must notify the
insurer within a reasonable time; what that time period is
generally depends on the facts and circumstances of each case.
Sonoco Bldgs., Inc. v. American Home Assurance Co., 877 F.2d
1350, 1356 (7th Cir. 1989); Northbrook Prop. & Cas. Ins. Co. v.
Applied Sys., Inc., 729 N.E.2d 915, 921 (Ill. App. Ct. 2000).
Parker argues denial is a major component of addiction. It is
for a jury to decide whether fourteen months was a reasonable

period of time for Parker to admit that he could not return to ER medicine because of his addiction.  See <u>Vogelsang v. Credit Life Ins. Co.</u>, 255 N.E.2d 479, 483 (Ill. App. Ct. 1970) (question of fact for jury as to whether 17-month delay was reasonable under disability insurance policy, given that long-term effects of insured's heart attack were unclear); <u>Clarke v. Unum Life Ins. Co.</u>, 14 F. Supp. 2d 1351, 1353-56 (S.D. Ga. 1998) (question of fact whether insured's mental illness prevented her from making a timely claim for disability insurance benefits, precluding summary judgment).

## D.   **Parker's Counterclaim**

In Count I of his counterclaim, Parker alleges Royal Maccabees' refusal to pay his claims is vexatious and unreasonable within the meaning of section 155 of Illinois' Insurance Code.  <u>See</u> 215 ILL. COMP. STAT. 5/155.[6]  Under section 155, a court can award attorneys' fees and costs if an insurance company's delay in settling a claim was vexatious and unreasonable.  <u>Id</u>.; <u>Citizens First Nat'l Bank v. Cincinnati Ins. Co.</u>, 200 F.3d 1102, 1110 (7th Cir. 2000).  Because the statute is

---

[6]  Every federal district court in the Northern District of Illinois that has addressed the issue has found section 155 of the Illinois Insurance Act to be preempted by ERISA.  <u>See</u> <u>Gawrysh v. CNA Ins. Co.</u>, 978 F. Supp. 790, 793 (N.D. Ill. 1997) (and cases cited therein).  Royal Maccabees has not raised the issue, however, and has waived it.  <u>See</u> <u>Winstead v. Indiana Ins. Co.</u>, 855 F.2d 430, (7th Cir. 1988)(insurance company waived ERISA preemption argument by failing to raise it at the district court level), <u>cert. denied</u>, 488 U.S. 1030 (1989).

penal in nature, it must be strictly construed. <u>Cincinnati Ins.</u>
<u>Co.</u>, 200 F.3d at 1110. Attorneys fees may not be awarded simply
because an insurer takes an unsuccessful position in litigation.
<u>Id.</u>; <u>see also</u> <u>McGee v. State Farm Fire and Cas. Co.</u>, 734 N.E.2d
144, 151 (Ill. App. Ct. 2000). An insurer's conduct will not be
considered vexatious and unreasonable if: (1) there is a bona
fide dispute concerning the scope and application of insurance
coverage; (2) the insurer asserts a legitimate policy defense;
(3) the claim presents a genuine legal or factual issue regarding
coverage; or (4) the insurer takes a reasonable legal position on
an unsettled issue of law. <u>Id</u>.

The court finds section 155 to be inapplicable. Here, even
though the court disagreed with Royal Maccabees' interpretation
of "total disability" as applied to Parker, its position,
nevertheless, involved a bona fide dispute regarding the scope of
its coverage. <u>See</u> <u>State Farm Mut. Auto. Ins. Co. v. Fisher</u>, 735
N.E.2d 747, 754 (Ill. App. Ct.) (insurance company's argument and
interpretation of insurance policy was reasonable and did not
show vexatiousness), <u>appeal allowed</u>, 742 N.E.2d 335 (Ill. 2000).
Moreover, Royal Maccabees has shown there are genuine issues of
fact as to whether Parker is entitled to coverage, given his
delay in filing a claim.

## V.  Conclusion

For the reasons stated above, the parties' respective motions for summary judgment are granted in part and denied in party.  Parker's request for oral argument is denied.  Judgment is entered in Royal Maccabees' favor with respect to Parker's counterclaims (both Counts I and II).

**E N T E R :**

_____

**PHILIP G. REINHARD, JUDGE**
**UNITED STATES DISTRICT COURT**

DATED:  _September 20, 2001_

23